UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CARLTON WIGGIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:13-cv-00409-DBH |
| | ) | |
| TOWN OF SEARSPORT, | ) | |
| | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION

In this action, Plaintiff Carlton Wiggin alleges that the Town of Searsport, through its sheriff, violated his federal and state constitutional rights in connection with a search of his premises and the seizure of certain items of personal property. The matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 15).[1] As explained below, the recommendation is that the Court grant in part and deny in part the motion for summary judgment.

### FACTUAL BACKGROUND

At summary judgment, the facts of a case are derived from the parties' Local Rule 56 statements of material facts, and are presented in the light most favorable to the non-moving party. The requirements of Local Rule 56 are mandatory. D. Me. Loc. R. 56(a) ("[A] motion for summary judgment and opposition thereto shall comply with the requirements of this rule."). "Failure to comply with the Rule can result in serious consequences . . . ." *Doe v. Solvay Pharm., Inc.*, 350 F. Supp. 2d 257, 260 (D. Me. 2004) *aff'd,* 153 Fed. App'x 1 (1st Cir. 2005). In particular: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations

---

[1] The Court referred the motion for report and recommended decision.

as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f).

*Stipulated Facts*

On May 20, 2014, the Court conducted a Rule 56(h) conference in anticipation of Defendant's Motion for Summary Judgment. (ECF No. 14.) In connection with the conference, Defendant itemized the facts that it maintained were undisputed. Plaintiff agreed to stipulate to the facts. Defendant's Statement of Material Facts (ECF No. 16), therefore, includes 19 statements that Defendant contends are established through a stipulation between the parties. The stipulated facts are as follows:

1. On November 21, 2008, the Town of Searsport Police Department executed a search warrant against a residence and out building owned by Plaintiff Carlton Wiggin but rented to Randall Hofland.

2. The search of the premises was approved by Justice of the Peace Paul Hazard, upon an application and supporting affidavit submitted by Searsport Police Chief Richard LaHaye on November 19, 2008.

3. Chief LaHaye's search warrant application established probable cause to believe that Hofland had committed the crime of theft by unauthorized taking or transfer, 17-A M.R.S. § 353, and that the stolen goods were located in the residence and out building. The probable cause showing was based, in part, on the results of another search of the same property carried out by Maine State Police on October 24, 2008.

4. The Maine State Police search, in which Hofland himself was being sought, followed a traffic stop on October 23, 2008, during which Hofland threatened a police officer with a gun and then fled by car and on foot to avoid apprehension.

5. While conducting their October 24, 2008, search, the state troopers identified a number of items that appeared to be stolen property inside Hofland's residence.

6. A description of some items observed in the residence on October 24, 2008, was reported by the Maine State Police to Chief LaHaye.

7. Some of the property known to be inside the residence matched property reported to Searsport police as missing from the home of George Perkins, an elderly man for whom Hofland served as caretaker.

8. A list of some items known to be missing was prepared by Mr. Perkins on April 19, 2007, and was provided to the Searsport Police Department by a private investigator retained by Mr. Perkins to try to locate his missing property.

9. The list of missing property, represented as being a partial list of "some" of the items believed to have been stolen, was incorporated into Chief LaHaye's November 19, 2008, Affidavit and Application for Search Warrant, along with Chief LaHaye's account of how/when Hofland would have stolen Perkins's property.

10. Included on Mr. Perkins's list was a 10mm Glock handgun that Hofland used to take an elementary school class hostage on October 31, 2008, and which police seized upon arresting him that day.

11. During the execution of the November 21, 2008, search warrant, Mr. Perkins was present to identify items at Hofland's residence that belonged to him and were stolen from him.

12. Along with many items on the partial list he compiled, Mr. Perkins identified other property he had not realized was stolen when he compiled the list, given the sheer number of things taken, but which he knew belonged to him upon seeing them.

13. Among such items identified at the scene[2] and subsequently seized by police was a Homelite 4500 watt generator.

14. Pursuant to Me. R. Crim. P. 41(d), Chief LaHaye prepared an inventory of all items seized under the authority of the search warrant, swearing to its accuracy on December 1, 2008.

15. The December 1, 2008, Inventory indicates that all items identified by Perkins during the November 21, 2008, search were returned to him by the Searsport Police Department, with the exception of some computers and personal papers that were taken to the Searsport Police Station.

16. Among the items returned to Mr. Perkins was the Homelite 4500 watt generator.

17. Because Randall Hofland was convicted of kidnapping for taking an elementary school class hostage at gunpoint, and sentenced to 38 years in prison, the District Attorney decided not to further prosecute him for the theft of Perkins's property.

18. Subsequently, Hofland sued Chief LaHaye, claiming the seized property belonged to him.

19. Plaintiff Wiggin later claimed that the generator belonged to him, and filed this suit more than five years later when Chief LaHaye advised him that Mr. Perkins was in possession of the generator and that Searsport police had no power to seize it and give it to Plaintiff, as he was demanding.

*Defendant's Statement of Facts*

In addition to the stipulated facts, Defendant introduces the following facts through the affidavit of Chief LaHaye. Because they are not properly controverted by Plaintiff, and because

---

[2] Plaintiff raises a hearsay objection in his Response in Opposition, stating that "the only source for such an assertion is the affidavit of Chief LaHaye." (Opposition at 4.) The statement is not offered for, and the statement is not accepted for, the truth of the matter asserted. Rather, the statement is offered to prove the reason that the generator was removed from the premises. Because the statement is not offered for the truth of the matter asserted, the statement is not hearsay. Fed. R. Evid. 801(c)(2).

they are supported by citations to Chief LaHaye's affidavit testimony, these facts are deemed admitted for purposes of summary judgment.[3]

At all relevant times, Richard LaHaye, Jr. was employed as the Chief of Police by the Town of Searsport, Maine. He has worked as a police officer for 33 years, and began serving as Chief of Police for the Town of Searsport in January 2008. On November 3, 2008, Chief LaHaye observed a Fisher snowplow and a bush hog outside Mr. Hofland's residence, which items were visible from the road. Both items appeared on the list of stolen goods that Mr. Perkins prepared. (Defendant's Statement ¶¶ 20-21.)

On November 21, 2008, while Searsport police were conducting the search of the residence and shed that Mr. Hofland was renting from Plaintiff, Plaintiff appeared at the property. When Plaintiff advised Chief LaHaye that he wished to enter the property that was being searched, the Chief advised him that he must remain off that portion of his property until they concluded the search. Chief LaHaye, however, placed no restriction on Plaintiff's access to the rest of the property. Plaintiff asked Chief LaHaye what would happen if he entered the property that was being searched despite the Chief's directive. Chief LaHaye advised Plaintiff that if he did so, he would face arrest for interfering with their search of the premises. Upon being informed that he could be arrested if he interfered with the search, Plaintiff left the scene. (*Id.* ¶¶ 28-32.) Plaintiff was not otherwise prohibited from entering the property. (*Id.* ¶¶ 33-34.) Searsport police officers concluded their search of the premises at approximately 2:00 p.m. on November 21, 2008, left the property, and have not returned to the property.

---

[3] Defendant offers six statements related to its liability insurance in support of an argument for summary judgment against any claim or claims under the Maine Tort Claims Act. The statements are immaterial because Plaintiff does not advance any claim under the Maine Tort Claims Act. (Plaintiff's Response to Plaintiff's Motion at 4, ECF No. 17.)

According to Chief LaHaye, Searsport police officers were on the property on two occasions: on October 23, 2008, to assist the Maine State Police tactical team in executing the search warrant for Randall Hofland; and on November 21, 2008, in connection with the execution of the search warrant issued to Searsport police. The real property was never cordoned off with police evidence tape. Tape was placed on a few pieces of machinery that were outside the residence in order to designate the items as items to be seized. Other than the brief discussion with Chief LaHaye during the search on November 21, 2008, Plaintiff never contacted the Chief to discuss his access to the property or suggested that he was prohibited from entering onto the property by a member of the Searsport Police Department. (*Id.* ¶¶ 35-37.)

*Plaintiff's Statement of Facts*[4]

Through his affidavit, Plaintiff asserts that "a significant portion" of his real property was cordoned by yellow tape, that the police department left the tape in place for nearly a year, and that he was made to understand that crossing the tape would expose him to arrest. After the removal of the tape, he discovered that "a generator was missing." Plaintiff maintains that he owns the generator. Upon inquiry, Chief LaHaye told him that the generator was given to Mr. Perkins pursuant to department policy and law, and could not be recovered. Plaintiff also states that the police department invited Mr. Perkins onto the property.

Defendant contends that certain statements are inconsistent with the stipulations and with Defendant's asserted facts that Plaintiff did not properly controvert. In particular, Defendant objects to the assertion that sections of the real property were cordoned off. (Reply Statement ¶¶ 7-8.) Additionally, Defendant asserts that the District Attorney, not a member of the police

---

[4] Plaintiff offers his own Statement of Fact and an affidavit in support thereof (ECF Nos. 18, 18-1). Plaintiff's individual statements do not include any citation, though it is apparent that his statements are meant to draw on his affidavit, which Plaintiff attached to his statement.

department, gave Mr. Perkins permission to enter the property. (Reply Statement ¶ 5.) Defendant admits the police department gave the generator to Mr. Perkins, and that the police department would not return it to Plaintiff. (*Id.* ¶ 9.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

The Court reviews the factual record in the light most favorable to the non-moving party, and resolves evidentiary conflicts and draws reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

In his complaint, Plaintiff recites two counts. In count I, a claim under 42 U.S.C. § 1983, Plaintiff asserts that Defendant denied his civil rights by "alienating him from his property, damaging his property, and continuing these injuries" under color of state law. (Complaint ¶ 11,

ECF No. 1-1.) In count II, under 5 M.R.S. § 4682, Plaintiff incorporates his count I allegations, complains that Defendant facilitated trespass onto his real property and the conversion of his personal property, and alleges that he was subjected to the threat of arrest in connection with the deprivation of his property rights. (*Id.* ¶¶ 16-18.)

Based on a review of the complaint and Plaintiff's response to the motion,[5] Plaintiff evidently seeks to recover for alleged violations of his rights under the Fourth and Fifth Amendments to the United States Constitution. Through its motion, Defendant raises several challenges to Plaintiff's claims.[6]

A. **Basis for Municipal Liability**

Defendant argues that Plaintiff's complaint fails to set forth sufficient factual allegations to support a municipal liability claim. (Motion at 8.) Regardless of whether Plaintiff asserts his constitutional challenge against Defendant under 42 U.S.C. § 1983 or 5 M.R.S. § 4682, because a municipality is not automatically liable for a constitutional deprivation that arises from the conduct of municipal employees, Plaintiff must demonstrate that the municipality itself bears responsibility for the constitutional deprivation. *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (1st Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[L]iability attaches to a municipality under § 1983 'only if the violation occurs pursuant to an official policy or custom.'" *Id.* (quoting *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008)).

---

[5] As to the bases of his claims, in his opposition to the motion, Plaintiff "specifically alleges the execution of a warrant, alienation from his property, and threat of arrest for entering his property." (Opposition at 4, citing Complaint ¶¶ 6, 8, 14, 16.).

[6] As mentioned above, one of Defendant's challenges focused on any claim that Plaintiff might have asserted under the Maine Tort Claims Act. In his opposition to the motion, Plaintiff represents that he is not pursuing a tort claim. (Opposition at 4-5.) This recommendation, therefore, does not address any potential claim under the Maine Tort Claims Act.

8

Defendant contends that summary judgment is warranted because Plaintiff has not identified "an unconstitutional custom, policy or practice" that would serve as a basis for Defendant's liability. (Motion at 9.) Plaintiff argues that his allegation that Chief LaHaye directed the deprivation satisfies the requirement that he assert a municipal policy, custom, or practice. (Opposition at 3.) A review of Plaintiff's complaint reveals that the municipal conduct about which he complains is related to the conduct of agents of the Searsport Police Department or agents of the Town of Searsport. (Complaint ¶¶ 3-11.) Although Plaintiff does not in his complaint identify Chief LaHaye as the primary actor, one plausible inference permitted by Plaintiff's allegations is that the agent who deprived him of his rights was Chief LaHaye, whose actions may constitute official policy of the Town of Searsport.[7] Plaintiff, therefore, has alleged a plausible claim against a municipality beyond the realm of mere conjecture. *Rodriguez-Reyes*, *v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013).[8] Accordingly, Defendant is not entitled to summary judgment based on its contention that Plaintiff has not generated sufficient evidence to support a municipal liability claim.

**B.    Fourteenth Amendment (search and seizure)**[9]

Preliminarily, Defendant maintains that Plaintiff asserts only tortious conduct, and does not allege conduct that would support an inference of a constitutional deprivation. (Motion at 12.) "The Fourth Amendment, made applicable to the States by the Fourteenth, . . . provides in pertinent

---

[7] "[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell*'s language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' . . . and whose decisions therefore may give rise to municipal liability under § 1983." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (citing *Monell,* 436 U.S. at 694).

[8] Claims asserting municipal liability for constitutional deprivations are not subject to a heightened pleading standard. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Rodriguez-Reyes*, 711 F.3d at 53. Rule 8(a)(2) simply requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[9] *See also* Me. Const. Art. 1, § 5.

part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (citation omitted). The amendment thus protects two separate interests; one involves searches and the other involves seizures. *Id.* at 63 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). A search potentially interferes with a person's reasonable expectations of privacy, and a seizure could interfere with a person's possessory interest in property. *Id.* In his complaint, Plaintiff reasonably invokes the Fourth Amendment because the undisputed facts establish that Defendant's agents searched Plaintiff's premises and seized property to which Plaintiff claims a possessory interest. Having reasonably invoked the protections of the Fourth Amendment, Plaintiff must demonstrate a factual basis to support a finding that the municipal policymaker, Chief LaHaye, acted unreasonably. This entails "a 'careful balancing of governmental and private interests.'" *Id.* at 71 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

Defendant argues that the search and the seizure of property were presumptively reasonable because they were authorized by a warrant issued by a neutral magistrate. Defendant further argues that the warrant was plainly supported by probable cause. (*Id.* at 12-13.) Defendant thus contends that unless Plaintiff can demonstrate an underlying flaw in the warrant or the manner of its execution, Defendant does not need to produce any further evidence of the reasonableness of its actions. (*Id.* at 13.) In response to Defendant's argument, Plaintiff merely asserts that his claim is based on the execution of the warrant, alienation from his property, and a threat that prevented him from entering some portion of the property, either during or after the search.

The record evidence simply fails to support Plaintiff's contention that the entry onto and the search of the property were unreasonable. Defendant acted pursuant to a warrant. Simply stated, Plaintiff has not produced any facts that would support a finding that the warrant was not

supported by probable cause, that the justice of the peace's probable cause finding was obtained by a false representation on the part of Chief LaHaye,[10] or that there is any other basis to overcome the presumption of regularity that attaches to the warrant. *See United States v. Leon*, 468 U.S. 897, 915, 923 (1984); *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012). Furthermore, given the substantial number of alleged stolen items, the presence of a third person (Mr. Perkins) on the property at the time of the search in order to identify the items would not support a finding that the search was unreasonable.[11] *See Wilson v. Layne*, 526 U.S. 603, 611-12 (1999) ("Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common-law tradition."); *United States v. Clouston*, 623 F.2d 485, 486-87 (6th Cir. 1980) (vacating suppression order that was based on presence of telephone company employees during a search pursuant to warrant because it was "clear that the telephone company employees were present on the premises in aid of the officers who were authorized to conduct a search for electronic devices, that they were there at the request of the officers and that the officers were present and acting in execution of the warrant"). Plaintiff thus cannot prevail on a claim based upon an alleged violation of his Fourth Amendment privacy interest.

The remaining issue concerns the seizure of personal property.[12] Plaintiff's claim is potentially based on two different seizures: (1) the seizure of items described in the warrant, and

---

[10] Chief LaHaye himself executed the subject Affidavit and Request for Search Warrant. (ECF No. 16-3, PageID # 92.)

[11] A review of the warrant reveals that Mr. Perkins's participation in the search was both anticipated and expressly authorized to facilitate the identification of particular items found on a long list of allegedly stolen property. (PageID # 92.)

[12] Plaintiff also complains that he was deprived of his right to access his real property. While some of the assertions made by Plaintiff in his affidavit are ambiguous, Plaintiff apparently asserts that during the search he was told that he could not enter the portion of the property that was cordoned by yellow tape, and that the tape remained on the property for more than a year. Plaintiff, however, offers no legal authority to suggest that his alleged facts would support a claim under § 1983. In addition, to the extent that Plaintiff maintains that the alleged retention of the tape constitutes

(2) the seizure of items not described in the warrant but identified by Mr. Perkins during the search as his property. "The Fourth Amendment states that 'no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched and the persons *or things to be seized.*'" *Rivera Rodriguez v. Beninato*, 469 F.3d 1, 4 (1st Cir. 2006) (quoting U.S. Const. amend. IV and supplying emphasis). The constitutional requirement of a particular description of the things to be seized "makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Id.*

As to property described in the warrant, the record is devoid of any facts that could support a finding that the seizure of such property was in violation of the Fourth Amendment's reasonableness standard. As explained above, Plaintiff has failed to present any facts to challenge the probable cause determination by which a neutral magistrate authorized seizure of the items. Defendant's seizure of the Homelite 4500 watt generator, however, is not similarly justified. The record establishes that the generator was not among the items identified in the warrant. While Defendant contends that the seizure was reasonable based on Mr. Perkins's identification of the

---

a seizure of property or person, or a deprivation of liberty or property without due process, Plaintiff has failed to produce facts that would support such a claim. Among other things, Plaintiff has failed to assert facts from which a fact finder could conclude that he was unreasonably detained during the search, *see Michigan v. Summers,* 452 U.S. 692, 705 (1981) (holding that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted"), or that, upon realizing the tape remained following conclusion of the search authorized by the warrant, he requested and was denied access to the property, *see City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999) (observing in the context of due process that where the individual is on notice of a deprivation pursuant to warrant, the onus falls on the individual to pursue post-deprivation remedies); *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Accordingly, the record would not support a claim under section 1983 based on Defendant's alleged use of yellow tape to cordon off a portion of Plaintiff's property in connection with the search merely because Defendant's officers left the tape in place upon conclusion of the search.

generator as belonging to him, the identification does not conclusively establish the reasonableness of Defendant's actions. Here, Plaintiff claims ownership of the generator, and the record contains no evidence of any action taken by Defendant to verify Mr. Perkins's claim to ownership. Defendant, therefore, is not entitled to summary judgment on Plaintiff's claim arising out of the seizure of the generator.

C.  **Fourteenth Amendment (due process)**[13]

Defendant also challenges Plaintiff's claim that is arguably based on a violation of Plaintiff's due process rights. According to Defendant, Plaintiff failed to exhaust his administrative remedies and is therefore barred from proceeding with a due process claim. (Motion at 13-14, citing Me. R. Crim. P. 41.) Because Plaintiff's summary judgment presentation is based on the generator and is not based on the personal property identified in the warrant, the due process analysis is limited to that item alone.[14]

The issue presented is whether the seizure and/or post-seizure transfer of the generator deprived Plaintiff of a right secured to him by the Due Process Clause of the Fourteenth Amendment. "To establish a procedural due process claim under § 1983, a plaintiff must allege that she was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008). Where a seizure is made pursuant to a warrant, due process does not require a pre-deprivation notice or hearing. The *ex parte* warrant proceeding, in effect, provides all the pre-deprivation process that is due. *PPS, Inc. v. Faulkner Cnty., Ark.*, 630 F.3d

---

[13] *See also* Me. Const. Art. 1, § 6-A.

[14] Plaintiff has failed to raise a genuine issue regarding his ownership of the property itemized in the warrant. For that reason, this Recommended Decision does not include a discussion about the post-seizure retention or transfer of those items. In other words, the summary judgment record fails to establish that Plaintiff has a viable ownership interest in any item of seized property other than the generator.

1098, 1107 (8th Cir. 2011) (describing this proposition as "axiomatic") (citing *Fuentes v. Shevin*, 407 U.S. 67, 93 n.30 (1972)). "The same is true if one of the warrant exceptions allows an officer to seize property without a warrant." *Id.* "Where the plain view doctrine justifies a warrantless seizure for valid law enforcement purposes in a criminal investigation under the Fourth Amendment, any predeprivation due process protections are necessarily subsumed within the Fourth Amendment analysis." *Id.*; *see also Sanders v. City of San Diego*, 93 F.3d 1423, 1429 (9th Cir. 1996) ("We hold that, when seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well.").

As explained above, a factual issue remains as to whether Defendant's seizure of the generator, which was not identified in the warrant, was reasonable. An issue thus exists as to the pre-deprivation process to which Plaintiff was entitled. Furthermore, even if the seizure is justifiable, the record lacks any facts upon which the Court could conclude that Defendant took "reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999).[15] In the absence of that factual predicate, Defendant's argument that Rule 41 satisfies due process does not establish a sufficient factual basis for the entry of judgment as a matter of law.[16]

---

[15] In giving such notice, it is not required that the state provide any notice regarding the availability of state-law remedies. *Perkins*, 525 U.S. at 241 ("Once the property owner is informed that his property has been seized, he can turn to . . . public sources to learn about the remedial procedures available to him.").

[16] If no notice was provided, the fault does not lie in Maine law. *See* Me. R. Crim. P. 41(g) (requiring that "a receipt for the property taken" be supplied "to the person from whom or from whose premises the property was taken"); *see also* 25 M.R.S. § 3502 ("Such property believed to be . . . stolen or otherwise illegally possessed, . . . must be retained in custody by the chief of police . . ., who shall make reasonable inquiry and efforts to identify and notify the owner or other person entitled to possession of the property and shall return the property after such person provides reasonable and satisfactory proof of that person's ownership or right to possession . . . .").

**CONCLUSION**

Based on the foregoing analysis, the recommendation is that the Court grant in part and deny in part Defendant's Motion for Summary Judgment. More specifically, the recommendation is that the Court enter judgment in favor of Defendant on Plaintiff's claims arising out of Defendants' entry onto and search of Plaintiff's property, and arising out of Defendant's seizure of the personal property identified in the warrant by which the search was conducted. The recommendation is that the Court otherwise deny the motion with the understanding that Plaintiff's remaining claim consists of Plaintiff's contention that Defendant improperly seized the generator.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of October, 2014